## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

RICKY E. MOORE,                    )
                                   )
                Plaintiff,         )
                                   )
        vs.                        )        No. 4:08CV1200-DJS
                                   )
CITY OF DESLOGE,                   )
MISSOURI, et al.,                  )
                                   )
                Defendants.        )


## ORDER

Now before the Court are plaintiff Ricky Moore's motion for summary judgment [Doc. #41]; defendants City of Desloge and James Bullock's motion for summary judgment [Doc. #43]; and defendant Aaron Malady's motion for summary judgment [Doc. #45]. These matters have been fully briefed and are ready for disposition.

On August 18, 2008, plaintiff filed the instant complaint, wherein plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against all three defendants. Plaintiff alleges that it was falsely reported to defendant Malady that plaintiff was illegally possessing and distributing a large quantity of oxycotin from his apartment. Plaintiff also alleges that, pursuant to this report, defendant Malady went to plaintiff's apartment, and forcibly entered the apartment without an arrest or search warrant, plaintiff's consent, or probable cause. Plaintiff alleges that two other officers were then called to the scene, and the three officers searched plaintiff's apartment and seized numerous items.

Further, plaintiff alleges that defendant Malady started to interrogate plaintiff, whereupon plaintiff asked for but was denied an attorney. Plaintiff also alleges that he was never read his <u>Miranda</u> rights.

Plaintiff was arrested, incarcerated, and ultimately charged with possession of a controlled substance in the Circuit Court of St. Francois County, Missouri. However, the trial court granted plaintiff's motion to suppress all evidence seized, and the criminal case was eventually dismissed.

In his complaint, plaintiff alleges that defendant City of Deslogue had established policies and practices to: (1) stop, detain, seize, and interrogate citizens without constitutional justification; (2) conduct custodial interrogations without giving <u>Miranda</u> warnings; (3) continue custodial interrogations after a citizen requested the assistance of an attorney; (4) use excessive force when conducting investigations; (5) seize property without constitutional justification; (6) improperly train or educate officers; and (7) improperly supervise officers. Further, plaintiff alleges that defendants City of Deslogue and Bullock inadequately trained and supervised defendant Malady, and that such failure resulted in a violation of plaintiff's constitutional rights. In ¶67 of his complaint, plaintiff states that defendants deprived him of the following clearly established constitutional rights: (1) the Fourth and Fifth Amendments' right to be free from unreasonable searches and seizures of his property; (2) the Fourth and Fifth Amendments' right to be free from unreasonable searches

and seizures of his person; (3) the Fourteenth and Fifth Amendments' right to be free from unreasonable searches and seizures without due process; (4) the Fifth Amendment's right to be read <u>Miranda</u> rights when arrested; (5) the Fifth Amendment's right to counsel; (6) the Fourteenth Amendment's right to equal protection; (7) the Fourteenth Amendment's right to equal privileges and immunities under the law; (8) the Fourteenth Amendment's right to be free from unreasonable seizures of his person; and the Fourteenth Amendment's right to be free from seizure of his person without due process.

## I. Plaintiff's Motion for Summary Judgment

Plaintiff states in his motion for summary judgment that there is no issue regarding liability for Count I of his complaint, "violation of 42 U.S.C. § 1983." Doc. #41, p. 1. Plaintiff's motion is based on his contention that "defendants are collaterally estopped from denying [plaintiff's] constitutional rights were violated by defendants," and he advances a collateral estoppel argument based on the state court's granting of a motion to suppress evidence in the underlying criminal case. Plaintiff "contends, as a result of the final Order/Judgment in Prior Case, that Defendants Malady, Bullock and City are <u>each</u> collaterally estopped in the case sub judice from relitigating whether [plaintiff's] U.S. Constitution Fourth Amendment Right and U.S. Const. Fourteenth Amendment Right against 'unreasonable seizure' of [plaintiff's] person and property were violated October 9-10, 2004." Doc. #42, pp. 3-4 (emphasis in original).

- 3 -

When presented with a collateral estoppel argument, the Court considers whether Missouri rules of collateral estoppel would bar relitigation of plaintiff's Fourth Amendment claim in a subsequent civil proceeding. If they do bar relitigation, then the federal full faith and credit statute, 28 U.S.C. § 1738, requires that the Court give preclusive effect to the state court judgment.

> The factors to be considered in determining whether collateral estoppel is appropriate include: (1) was the issue decided in the prior adjudication identical to the issue in the present action; (2) did the prior adjudication result in a judgment on the merits; (3) was the party against whom collateral estoppel is asserted a party or in privity with a party to the prior adjudication; and (4) did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in the prior suit.

Duncan v. Clements, 744 F.2d 48, 51 (8th Cir. 1984).

The Eighth Circuit's decision in Duncan is instructive. In that case, criminal proceedings were initially brought against the plaintiff for carrying a concealed weapon. However, the criminal proceedings were subsequent to a contested arrest and search. The state court eventually ruled in the plaintiff's favor on his motion to suppress evidence, and the prosecuting attorney entered a memorandum of nolle prosequi in the criminal case because the essential evidence had been suppressed. Plaintiff then brought a civil rights action against the arresting officer, and sought to foreclose the officer's ability to relitigate the constitutionality of the arrest and search.

The court in <u>Duncan</u> noted that the doctrine of collateral estoppel may be applied in suits brought under 42 U.S.C. § 1983 to preclude relitigation of a federal constitutional issue decided in state criminal proceedings, but further noted that the doctrine is typically used defensively to preclude <u>a plaintiff</u> from relitigating Fourth and Fifth Amendment issues decided in state criminal proceedings. After considering plaintiff's collateral estoppel argument, the court ruled that the state court's finding that the plaintiff's arrest and search were unconstitutional could not be used offensively against the arresting officer in the subsequent civil rights suit. In so ruling, the court found that the interests of the state in a criminal proceeding are not identical to the personal interests of an individual officer and, thus, the officer was not in privity with the state, and did not have a full and fair opportunity to litigate at the suppression hearing, as he had no control over the state's presentation of its case. <u>Id.</u> at 51-52; <u>see also</u> <u>Coleman v. Rieck</u>, 154 Fed. Appx. 546, 548 (8th Cir. 2005) ("[T]he district court correctly found that the instant [illegal-search] claim was not controlled by the ruling of the Nebraska Court of Appeals...in which the court reversed [plaintiff's] conviction for possession of crack cocaine because it found that the pat-down search of [plaintiff] was illegal. The Nebraska Court of Appeals did not address whether [defendant] was entitled to qualified immunity, and [defendant] was not in privity with the state and did not have the opportunity to litigate qualified immunity." (internal citation omitted)); <u>Turpin v. County</u>

of Rock, 262 F.3d 779, 782-83 (8th Cir. 2001) ("[C]ollateral estoppel bars re-litigation of issues decided in a prior action if the party against whom the rule is applied was either a party or in privity with a party to the prior action and where there was an opportunity to fully and fairly litigate the issue in the prior action. Collateral estoppel cannot be used against the officers in our case, as the officers were neither parties nor in privity with the State in the criminal action and did not have a full and fair opportunity to litigate the issues in the criminal action." (internal citation omitted)).

Plaintiff argues that all four requirements for the application of collateral estoppel are present in this case, and therefore maintains that the prior disposition of his motion to suppress conclusively establishes that his constitutional rights were violated by defendants Malady and Bullock. However, plaintiff's argument is contrary to the above cited Eighth Circuit case law. Specifically, the third element, that these defendants were a party or in privity with a party to the prior adjudication, and the fourth element, that these defendants had a full and fair opportunity to litigate the issue in the prior suit, are not demonstrated. Further, to the extent plaintiff seeks summary judgment against defendant City of Desloge on a failure-to-train theory or a municipal custom or policy theory based on defendants Malady or Bullock's actions, such a claim necessarily fails in light of plaintiff's failure to demonstrate the individual liability of defendants Malady or Bullock. See McCoy v. City of

<u>Monticello</u>, 411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). Plaintiff's motion for summary judgment, the basis of which is that the prior state decision granting his motion to suppress conclusively establishes that his constitutional rights were violated by defendants for purposes of the instant civil proceeding, is without merit and therefore will be denied.

## II. Defendant Malady's Motion for Summary Judgment

### A. Standard of Review

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." <u>Reich v. ConAgra, Inc.</u>, 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." <u>Id.</u> "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" <u>Burchett v. Target Corp.</u>, 340 F.3d 510, 516 (8th Cir. 2003) (quoting <u>Rose-Maston v. NME Hosps., Inc.</u>, 133 F.3d 1104, 1107 (8th Cir. 1998)).

In ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990). Consequently, in order to withstand a motion for summary judgment, evidence submitted by a non-movant must contain specific facts, and general statements will not be supplemented by a court's assumptions.

> It will not do to "presume" the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff responds with affidavit containing general allegation of injury, which must be deemed to constitute averment of requisite specific facts since otherwise allegation of injury would be unsupported (which is precisely what defendant claims it is).

<u>Id. at 889</u>. Further, the Court notes that it is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" <u>White v. McDonnell Douglas Corp.</u>, 904 F.2d 456, 458 (8th Cir. 1990) (<u>quoting</u> <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989)).

**B. Facts**

In compliance with E.D.Mo. L.R. 4.01(E), defendant Malady filed a statement of undisputed material facts in support of his motion for summary judgment. Doc. #46. Plaintiff's memorandum in opposition to defendant Malady's motion does not include a statement of material facts that notes, for all disputed facts, the paragraph number from defendant Malady's listing of facts. Indeed, the statement of uncontroverted facts submitted by plaintiff in support of his opposition to defendant Malady's motion for summary judgment appears to be the same as the statement of uncontroverted facts he filed in support of his own motion for summary judgment. Doc. #47-1. As such, plaintiff's statement of uncontroverted facts contains a large number of factual assertions that are wholly irrelevant for purposes of evaluating defendant Malady's motion for summary judgment.

Plaintiff's statement of uncontroverted facts does not make any reference to the facts alleged by defendant Malady in his statement of facts as required by this Court's local rules. Because plaintiff fails to specifically controvert any of the matters set forth in defendant Malady's statement of undisputed facts, all such matters are deemed admitted.[1]

---

[1]"All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 7-4.01(E).

## 1. Defendant's Undisputed Facts Deemed Admitted

On October 9, 2004, defendant Malady was a police officer working for the City Of Desloge, Missouri in St. Francois County, Missouri. Defendant Malady was a certified Missouri law enforcement officer, having completed full police academy training, and having maintained his P.O.S.T. certification hours for ongoing law enforcement education, having had several years of on-the-job training and experience, and being himself certified as a Field Training Officer by the Missouri State Highway Patrol. During that night of October 9, 2004, while on duty, defendant Malady became aware of a warrant for the arrest of Rickey E. Moore from Washington County, Missouri, both from a tipster and via radio dispatch confirmation. There was in fact such a warrant for the arrest of plaintiff. The tipster told defendant Malady that plaintiff was illegally possessing and dealing a large quantity of the controlled substance oxycontin.

While approaching the residence, defendant Malady learned further via radio dispatch that plaintiff was likely armed and dangerous, having had at least one or more incidents in his past in which he had indicated a willingness to use firearms illegally against people. Plaintiff had in fact been convicted of so using firearms. Plaintiff in fact had in his possession a large number of oxycontin pills without having a valid prescription for them.[2]

_____

[2]Defendant Malady's statement of undisputed material facts contains assertions that plaintiff had a bottle containing a large number of oxycontin pills without having a valid prescription and that such a bottle was unlabeled, whereas plaintiff, in his uncontroverted facts, refers to such pills as his "doctor prescribed" oxycontin medications.

As of October 9, 2004, defendant Malady had never before met plaintiff or had any communications with him of any kind.

At around 11:45 p.m., defendant Malady approached, and eventually entered, plaintiff's residence. By entering plaintiff's residence (or by opening or pushing on the door there), defendant Malady did not intend to effect the arrest of any person inside the residence, and that if the opening of the door struck, or had any physical effect on plaintiff or any person inside of the residence, that was an accidental and unintended effect.[3] Plaintiff was not seriously injured by these actions.[4] Defendant Malady told

---

Doc. #46, pp. 8, 9; Doc. #47-1, ¶23; <u>see also</u> Doc. #52, pp. 3-4. As noted above, plaintiff fails to controvert properly defendant Malady's statement of material facts, and the Court therefore accepts as undisputed the fact that plaintiff had an unlabeled bottle containing a large number of oxycontin pills without having a valid prescription. Further, even if plaintiff had properly responded to defendant Malady's statement of undisputed material facts, the Court would find that plaintiff's characterization of the bottle of pills as "doctor prescribed" in response to defendant Malady's assertion that such a bottle had no prescription label on it fails to create a genuine dispute regarding the existence of a label on the bottle.

[3]Plaintiff's uncontroverted facts characterizes the entry as "violent." Doc. #47-1, ¶16. As noted above, plaintiff fails to controvert properly defendant Malady's statement of material facts, and the Court therefore accepts as undisputed the fact that defendant Malady opened the door to plaintiff's residence without intent to effect physically persons inside. Further, even if plaintiff had properly responded to defendant Malady's statement of undisputed material facts, the Court would find that plaintiff's characterization of defendant Malady's entry as "violent" in response to defendant Malady's assertion that his actions were unintentional fails to create a dispute regarding the purposefulness of defendant Malady's actions.

[4]Cited by defendant Malady is the affidavit of an individual who arrived on the scene upon plaintiff's request, who avers that "I never saw [plaintiff] injured or abused in any way. I did not observe any physical marks on him that caused me to believe that he had been injured prior to my arrival." Doc. #45-3, ¶11. Plaintiff fails to controvert properly defendant Malady's statement of material facts, and the Court therefore accepts as undisputed the fact that plaintiff was not seriously injured by defendant Malady.

plaintiff that there was a warrant for his arrest. Plaintiff requested time to dress and to have a friend come over so that plaintiff could give him some important property to hold. Defendant Malady granted plaintiff's requests.[5]

Defendant Malady reported having located plaintiff and was told that Washington County deputies were being dispatched to plaintiff's residence to take plaintiff directly into custody. While waiting in plaintiff's residence, defendant Malady noticed in plain sight that plaintiff had firearms both present on his person and immediately accessible to him, as well as a large bottle full of pills, which appeared to be oxycontin, and which bottle had no prescription label on it. Plaintiff was not handcuffed. Defendant Malady reported the existence of firearms via radio dispatch, and one or more Desloge officers came to the residence as back-up. Defendant Malady seized the bottle with the pills in it as potential evidence. Washington County deputies arrived and took plaintiff into custody. Doc. #46, pp. 8-10.

---

[5]Defendant Malady's statement of undisputed material facts contains the assertion that plaintiff requested time to dress and to have a friend come over so plaintiff could give him property to hold, and that such requests were granted. Doc. #46, p. 9. Plaintiff's statement of uncontroverted facts contains the assertion that defendant Malady denied plaintiff's request to put on some clothes. Doc. #47-1, ¶19. As noted above, plaintiff fails to controvert properly defendant Malady's statement of material facts, and the Court therefore accepts as undisputed the fact that defendant Malady allowed plaintiff time to dress. Further, even if plaintiff had properly responded to defendant Malady's statement of undisputed material facts, the Court would exclude this irrelevant dispute from the facts accepted as true for purposes of defendant Malady's motion for summary judgment.

## 2. Additional Undisputed Facts

In response to plaintiff's statement of uncontroverted facts for purposes of plaintiff's motion for summary judgment, defendant Malady (whose response to that motion was filed in conjunction with defendants Bullock and City of Desloge), does not controvert many of plaintiff's facts. The Court notes that defendant Malady admitted the following facts for purposes of plaintiff's motion for summary judgment, and such admissions were incorporated by reference in his reply memorandum. Doc. #55-2, p. 2. The following facts are not inconsistent with but are in addition to the above stated undisputed facts, and will be accepted as true for purposes of this motion: (1) the tipster was not known by defendant Malady, Doc. #47-1, ¶7; Doc. #52, p. 1; (2) the arrest warrant was not received or read by defendant Malady before he appeared at plaintiff's residence, Doc. #47-1, ¶10; Doc. #52, p. 1; (3) defendant Malady was not provided, and did not have a physical description, a birth date, or a social security number of Ricky Moore, Doc. #47-1, ¶8; Doc. #52, p. 1; (4) defendant Malady did not know what plaintiff looked like before he arrived at plaintiff's residence, Doc. #47-1, ¶15; Doc. #52, p. 1; (5) after defendant Malady knocked on plaintiff's door, plaintiff cracked the door slightly, and defendant Malady pushed on the door which then struck plaintiff in the shoulder and chest and knocked him to the floor, Doc. #47-1, ¶16; Doc. #52, pp. 2-3; (6) plaintiff did not consent to defendant Malady's entry, Doc. #47-1, ¶24; Doc. #52, p. 1; (7) after entering plaintiff's residence, defendant Malady drew his

firearm and pointed it at plaintiff, Doc. #47-1, ¶17; Doc. #52, p. 3; (8) defendant Malady was in plaintiff's residence for forty to sixty minutes, during which time plaintiff was not free to leave, Doc. #47-1, ¶28; Doc. #52, p. 4; (9) plaintiff was not read his <u>Miranda</u> rights during the forty to sixty minutes defendant Malady was in his residence, Doc. #47-1, ¶29; Doc. #52, p. 4; (10) on October 12, 2004, defendant Malady executed, and defendant Bullock notarized, a Probable Cause Statement supporting a criminal complaint against plaintiff in <u>State of Missouri v. Ricky E. Moore</u>, Circuit Court of St. Francois County, Missouri, Cause No. 04-CR-614551-01, charging plaintiff with the Class B Felony of possession of a controlled substance with intent to distribute, Doc. #47-1, ¶32; Doc. #52, p. 1; (11) plaintiff filed a motion to suppress evidence, and such a motion was granted, Doc. #47-1, ¶¶34, 37; Doc. #52, pp. 1, 5; and (12) the State of Missouri dismissed the criminal charges against plaintiff, Doc. #47-1, ¶41; Doc. #52, p. 5.

Plaintiff's statement of uncontroverted facts contains the assertion that defendant Malady and other officers searched plaintiff's residence and car. Doc. #47-1, ¶23. However, defendant Malady denies that he searched plaintiff's car. Doc. #52, pp. 3-4. Indeed, while the evidence cited by plaintiff may show that his car was searched, such evidence establishes only that it was searched by other officers, and does not support the

implication that defendant Malady searched his car.[6]  Accordingly, the Court does not accept as true for purposes of this motion the fact that defendant Malady searched plaintiff's car.[7]

## Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that "persons acting under the color of state law deprived [him] 'of rights, privileges, or immunities secured by the Constitution.'"  Gregory v. City of Rogers, 974 F.2d 1006, 1009 (8th Cir. 1992) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986)).  A review of plaintiff's complaint reveals a broad range of 42 U.S.C. § 1983 claims asserted against defendants. However, in response to defendant Malady's motion, plaintiff only refers to the "unreasonable seizure of [plaintiff's] person and property" by defendant Malady, and it is unclear whether plaintiff abandons his other claims.  Further, it is unclear exactly what constitutional violations plaintiff maintains through his "unreasonable seizure" claim.  That is, it is questionable whether

---

[6]The Court refers to defendant Malady's testimony appearing in the transcript on appeal:

Q.    At some point did you search the Lincoln motor vehicle?
A.    I believe Officer Haus went to check that.

Doc. #47-14, p. 10.  Nothing else cited by plaintiff in support of his assertion that defendant Malady searched plaintiff's vehicle suggests that defendant Malady did, in fact, search plaintiff's vehicle.

[7]All other assertions that appear in plaintiff's statement of uncontroverted facts that are not recognized above, whether or not disputed by defendant Malady, have been found by the Court to be either irrelevant to defendant Malady's instant motion or legal conclusions not properly considered.

plaintiff argues that the fact of his arrest (that is, a claim of false arrest) and the seizure of his property are constitutional violations redressable under 42 U.S.C. § 1983, or alternatively argues that the manner in which he was seized was unconstitutionally excessive. The Court notes that the argument set forth in plaintiff's memorandum in opposition relevant to defendant Malady's motion for summary judgment is premised on the above rejected collateral estoppel theory (that violations of plaintiff's Fourth and Fourteenth Amendment rights are conclusively established because plaintiff's motion to suppress was granted in the criminal action), and offers little clarification. Nevertheless, the Court will broadly construe plaintiff's complaint and memorandum in opposition in analyzing potential claims.

Government officials, such as police officers, "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a police officer is entitled to qualified immunity, a court should analyze whether the officer's conduct violated a constitutional right, and whether the right was clearly established. A court may address either question first. See Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 818 (2009). "If either question is answered in the negative, the [officer] is entitled to qualified immunity." Norris v. Engles, 494 F.3d 634, 637 (8th Cir. 2007). "The qualified immunity

standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Pace v. City of Des Moines, 201 F.3d 1050, 1052 (8th Cir. 2000) (quotation omitted). The party asserting qualified immunity "has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008).

**A. False Arrest**

A false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001); see also Anderson v. Franklin County, 192 F.3d 1125, 1131 (8th Cir. 1999) (stating that a false-arrest claim under § 1983 does not lie where officer had probable cause to make the arrest). Accordingly, a false arrest claim begins with a probable cause analysis. "Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed...an offense' at the time of the arrest." Smithson v. Aldrich, 235 F.3d 1058, 1062 (8th Cir. 2000) (alteration in original) (quoting Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir. 1986)); see Beck v. Ohio, 379 U.S. 89, 91 (1964) (finding that probable cause exists if "at the moment the arrest was made...the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant

a prudent man in believing" that the person arrested committed the crime with which he was charged). When considering a claim brought pursuant to 42 U.S.C. § 1983, "there need not be actual probable cause for an officer to be shielded by qualified immunity; an objectively reasonable belief that there was probable cause is enough." Pace, 201 F.3d at 1055 (citations omitted).

It is clearly established that "an arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." Fair v. Fulbright, 844 F.2d 567, 569 (8th Cir. 1988) (citation omitted). When a plaintiff in an action brought under 42 U.S.C. § 1983 contends that an officer acted without probable cause, the officer is entitled to qualified immunity unless the "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." George v. City of St. Louis, 26 F.3d 55, 57 (8th Cir. 1994).

In this case, it is undisputed that defendant Malady arrested plaintiff pursuant to an arrest warrant. Plaintiff sets forth no facts which dispute the validity of the arrest warrant, and further, he does not argue that such a warrant was not supported by probable cause. Additionally, although plaintiff notes that defendant Malady did not physically possess the warrant at the time of the arrest, there may have been more than one "Ricky Moore" in the area, and defendant Malady did not know what plaintiff looked like, plaintiff fails to assert any argument demonstrating why these facts make the arrest warrant facially

- 18 -

invalid.  The Court will accordingly grant summary judgment in defendant Malady's favor on plaintiff's claim of false arrest.

## B. Excessive Force

It appears plaintiff may also intend to assert a claim of excessive force for the manner in which defendant Malady entered plaintiff's residence.  The Court should "analyze excessive force claims occurring in the context of seizures under the Fourth Amendment...."  <u>Henderson v. Munn</u>, 439 F.3d 497, 502 (8th Cir. 2006).  The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person.  <u>See</u> <u>Guite v. Wright</u>, 147 F.3d 747, 750 (8th Cir. 1998).  "The violation of this right will, of course, support a § 1983 action."  <u>Crumley v. City of St. Paul</u>, 324 F.3d 1003, 1007 (8th Cir. 2003).  Nevertheless, an officer is entitled to qualified immunity when any force used is "'objectively reasonable' in light of the facts and circumstances confronting" the officer.  <u>Guite</u>, 147 F.3d at 750 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989)).  "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law."  <u>Tlamka v. Serrell</u>, 244 F.3d 628, 632 (8th Cir. 2001) (citation omitted).  In determining whether an action was objectively reasonable,

> a court must pay close attention to the particular facts.  It should consider such factors as the severity of a suspected crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting or evading arrest.

Nelson v. County of Wright, 162 F.3d 986, 990 (8th Cir. 1998) (citing Graham, 490 U.S. at 396). Also, "the lack, or minor degree, of any injury sustained during an arrest is relevant in considering the reasonableness of the force used." Cook v. City of Bella Villa, 582 F.3d 840, 850 (8th Cir. 2009) (citation omitted); see also Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) (concluding "relatively minor scrapes and bruises" combined with a "less-than-permanent aggravation of a prior shoulder condition were de minimis injuries" which did not support a finding of excessive force).

In this case, defendant has properly set forth the following facts: (1) by entering plaintiff's residence (or by opening or pushing on the door there), defendant Malady did not intend to effect the arrest of any person inside the residence; and (2) if the opening of the door struck, or had any physical effect on plaintiff or any person inside of the residence, that was an accidental and unintended effect. Accordingly, although the use of force (that is, pushing on the door and drawing a firearm) was intentional, the consequence of the force (that is, striking plaintiff with the door and knocking him to the floor) was unintentional. Moreover, it is undisputed that defendant Malady received a radio dispatch that plaintiff was likely armed and dangerous. It is also undisputed that defendant Malady was following up, not only on an arrest warrant, but on a tip that plaintiff was illegally possessing a large quantity of a controlled substance. Having received such reports, it was objectively

reasonable for defendant Malady to anticipate a dangerous situation involving firearms. Additionally, although the door hit plaintiff and caused plaintiff to fall to the ground, any injury caused has not been shown to be serious. In light of all of these circumstances, the force used was objectively reasonable. In consideration of the applicable factors, the Court finds as a matter of law that defendant did not use excessive force during his interaction with plaintiff.

## C. Unreasonable Search/Seizure of Property

Plaintiff arguably asserts claims that defendant Malady unreasonably searched his residence and automobile, and unlawfully seized plaintiff's property. However, as an initial matter, the Court notes that there is no evidence that defendant Malady searched plaintiff's automobile, and will not examine such a claim further.

In this case, defendant Malady validly entered plaintiff's residence because he did so pursuant to an active arrest warrant for plaintiff. "A valid arrest warrant contains authority to enter the residence of the person named in the warrant if (1) the officers reasonably believe the person resides there, and (2) the officers reasonably believe the person is present when the warrant is executed." United States v. Pruneda, 518 F.3d 597, 603 (8th Cir. 2008). Further, once inside, defendant Malady was permitted to follow and remain with plaintiff at all times. This is because, "[e]ven absent an affirmative indication that the arrestee might have a weapon available or might attempt to escape,

the arresting officer has authority to maintain custody over the arrestee and to remain literally at [the arrestee's] elbow at all times." United States v. DeBuse, 289 F.3d 1072, 1074 (8th Cir. 2002) (quotation omitted). Defendant Malady also was entitled to seize any object that was in his plain view if that object's incriminating character was immediately apparent. United States v. Banks, 514 F.3d 769, 773 (8th Cir. 2008) ("Police may seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent." (citation omitted)). This included plaintiff's firearms, as "firearms are tools of the trade for drug dealers," Lyons v. Robinson, 783 F.2d 737, 739 (8th Cir. 1985), and a large bottle of unlabeled pills. Defendant Malady has set forth undisputed facts that these items were in his plain view before their seizure, and plaintiff has failed to come forward with facts that suggest these items were observed by defendant Malady from an unlawful vantage point. Accordingly, the Court finds no issue of material fact regarding the constitutionality of the seizure of plaintiff's property, and that defendant Malady is entitled to judgment as a matter of law.

**D. Violation of Right to Counsel/Failure to Read Miranda Warnings**

Plaintiff asserts in his complaint that defendant Malady violated plaintiff's Sixth Amendment right to counsel, and a violation of the rule stated in Miranda v. Arizona, 384 U.S. 436 (1966). The Supreme Court has stated that "the right to counsel granted by the Sixth and Fourteenth Amendments means at least that

a person is entitled to the help of a lawyer <u>at or after the time</u> <u>that judicial proceedings have been initiated against him</u> 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" <u>Brewer v. Williams</u>, 430 U.S. 387, 398 (1977) (emphasis added) (quoting <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972)).   A person is "denied the basic protections of that guarantee <u>when there was used against him at his trial</u> <u>evidence of his own incriminating words</u>, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." <u>United States v. Massiah</u>, 377 U.S. 201, 205–06 (1964) (emphasis added).   A failure to read <u>Miranda</u> warnings is similarly treated. <u>See</u> <u>Hannon v. Sanner</u>, 441 F.3d 635, 638 (8th Cir. 2006) ("[Plaintiff's] action is premised on an alleged violation of the constitutional rule announced in <u>Miranda</u> and subsequent decisions.   The remedy for any such violation is suppression of evidence, which relief [plaintiff] ultimately obtained from the Supreme Court of Minnesota.   The admission of [plaintiff's] statements in a criminal case did not cause a deprivation of any 'right' secured by the Constitution, within the meaning of 42 U.S.C. § 1983.").

In this case, plaintiff was arrested, but judicial proceedings were eventually dismissed.   Further, there was never any trial at which evidence obtained as a result of the alleged failure to provide counsel or failure to read <u>Miranda</u> warnings was introduced.   Accordingly, even if plaintiff had adduced evidence that defendant Malady interrogated him without an attorney present

after plaintiff requested one, or arrested plaintiff without stating his <u>Miranda</u> rights, plaintiff fails to set forth a constitutional violation cognizable under 42 U.S.C. § 1983, and the Court will grant summary judgment in defendant Malady's favor on these claims.

## II. Defendants Bullock and City of Desloge's Motion for Summary Judgment

Defendants Bullock and City of Desloge have also filed a motion for summary judgment, with a properly submitted statement of material facts in compliance with E.D.Mo. L.R. 4.01. Plaintiff again fails to include a statement of material facts that notes, for all disputed facts, the paragraph number from defendants Bullock and City of Desloge's listing of facts. Indeed, the statement of uncontroverted facts submitted by plaintiff in support of his opposition to defendants Bullock and City of Desloge's motion for summary judgment appears to be the same as the statement of uncontroverted facts he filed in support of his own motion for summary judgment and in opposition to defendant Malady's motion for summary judgment. Doc. #48-1. As such, plaintiff's statement of uncontroverted facts contains a large number of factual assertions that are wholly irrelevant for purposes of evaluating defendants Bullock and City of Desloge's motion for summary judgment. Plaintiff's statement of uncontroverted facts does not make any reference to the facts alleged by defendants Bullock and City of Desloge in their statement of facts as required by this Court's local rules. Because plaintiff fails to specifically controvert

any of the matters set forth in defendant Bullock and City of Desloge's statement of undisputed facts, all such matters are deemed admitted. However, for the reasons stated below, a recitation of such facts is unnecessary.

In opposition to defendants Bullock and City of Desloge's motion for summary judgment, plaintiff again relies on the above rejected collateral estoppel theory to establish these defendants' unconstitutional acts. As this theory is rejected above, the Court is not persuaded that plaintiff sets forth sufficient arguments that demonstrate why his claims survive defendants Bullock and City of Desloge's motion for summary judgment.

Further, as noted above, plaintiff's claims of failure to train and unlawful municipal custom or practice asserted against defendants Bullock and City of Desolge require a showing of individual liability for the underlying substantive claim. See McCoy, 411 F.3d at 922. Since the Court above grants defendant Malady's motion for summary judgment, plaintiff's claims against defendants Bullock and City of Desloge for which defendant Malady's actions serve as a basis must fail.

Finally, to the extent plaintiff attempts to establish liability against Bullock for his direct involvement in the alleged deprivation of plaintiff's rights, or municipal liability against defendant City of Desloge for defendant Bullock's actions, such claims fail. Plaintiff, in his opposition to defendants Bullock and City of Desloge's motion for summary judgment, states that "Mallady and Bullock, as direct participants in the October 9-10,

2004 events at [plaintiff's] Apartment and the filing of the
criminal Complaint against Ricky based upon the evidence illegally
seized October 9-10, 2004, are each liable to Ricky under 42 U.S.C.
§ 1983...." Doc. #48. This general statement of defendant
Bullock's involvement fails to direct the Court to the actions of
defendant Bullock that plaintiff maintains violated his
constitutional rights. The Court notes that plaintiff has come
forward with no evidence that defendant Bullock was present during
defendant Malady's execution of the arrest warrant or the seizure
of plaintiff's property. Further, accepting as true plaintiff's
assertions that defendant Bullock notarized a Probable Cause
Statement executed by defendant Malady without making certain
inquiries (which then supported the criminal complaint against
plaintiff), plaintiff fails to demonstrate how the act of
notarizing such a statement serves as a deprivation of his rights
redressable under 42 U.S.C. § 1983. This Court has already
dismissed plaintiff's conspiracy claims. Doc. #17. If plaintiff
means to assert that defendant Bullock fraudulently fabricated
evidence, no such action exists because there is no evidence that
defendant Bullock knew the Probable Cause Statement was false. See
Van Buren v. Cave, 236 Fed. Appx. 894, 898 (5th Cir. 2007).
Indeed, there is no evidence that the Probable Cause Statement, in
fact, contained fraudulent information. To the extent plaintiff
means to assert some sort of false or malicious prosecution claim,
such a claim is typically asserted under state law, and, like false
arrest, is defeated if it is shown that there was probable cause

for the prosecution. <u>See</u> <u>Youngblood v. Hy-Vee Food Stores, Inc.</u>, 266 F.3d 851, 856 (8th. Cir. 2001). Plaintiff has not submitted sufficient evidence or made sufficient argument entitling his survival of summary judgment on this issue. Further, the Court above finds that defendant Malady <u>did</u> have probable cause to arrest plaintiff. Any other claim plaintiff may intend to assert is too nebulous to survive summary judgment. Accordingly, the Court will grant defendants Bullock and City of Desloge's motion for summary judgment.

For the above stated reasons,

**IT IS HEREBY ORDERED** that plaintiff Ricky Moore's motion for summary judgment [Doc. #41] is denied.

**IT IS FURTHER ORDERED** that defendants City of Desloge and James Bullock's motion for summary judgment [Doc. #43] is granted.

**IT IS FURTHER ORDERED** that defendant Aaron Malady's motion for summary judgment [Doc. #45] is granted.

Dated this __8th__ day of March, 2010.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE